THE PEOPLE OF THE STATE OF ILLINOIS, FOR USE, ETC.,

v.

OLIVER SMITH ET AL.

*Executions—Priority of Lien—Distribution of Proceeds of Property Sold—Constables.*

1. An execution becomes a lien upon the personal property of the judgment debtor from the time of its delivery to a constable.

2. An officer holding a senior execution may, after the levy of a junior execution and before sale, levy upon the property and take it from the officer holding the junior execution.

3. It *seems* that the remedy of a judgment debtor, in whose favor a senior execution is in the hands of an officer who stands by without objecting while property of the common debtor, levied upon under a junior execution, is sold, is against such officer and not against the officer levying the junior execution.

[Opinion filed January 10, 1889.]

APPEAL from the Circuit Court of Richland County; the Hon. WILLIAM C. JONES, Judge, presiding.

Messrs. ALLEN & FRITCHEY and McCAULEY & MOUTRAY, for appellant.

The law is, as soon as an execution is delivered to a constable it becomes a lien on the personal property of the judgment debtor, and hence a senior execution has precedence over a junior execution; but if the officer having the junior execution makes a levy and sale of the property the sale will be good, and the property can not be taken from the purchaser by the senior execution. The only remedy of the party injured is against the officer. Rogers v. Dickey, 1 Gilm. 644.

The language of the court in this case is, that if there is a sale of property under the junior execution the sale is good and the purchaser is protected, and hence the senior execution ceases to be a lien on the property; but the law gives the party injured a remedy against the officer; hence appellant has pursued the remedy given him under the law.

Suppose Smith had not known of appellant's execution and levied on this property and sold it before Miller knew it. Undoubtedly appellant would have a remedy against Smith. If appellant has no remedy against Smith in this case, then there is but very little, if anything, in a senior execution. It would only be a question of who had the opportunity to make the first levy.

Mr. R. B. WITCHER and J. H. PACKARD, for appellee.

It is a well settled rule of law that a senior execution has a priority of lien, provided a levy is made in the lifetime of the execution, but not otherwise. But in this case, while it is true that Miller held the senior execution, it is equally true that he neither levied nor attempted to levy on the horse the price of which is in litigation, either in the lifetime of the execution or any other time.

Smith received an execution, the same being a junior execution. He served it; he made a levy and sold property to satisfy it. He obeyed the writ and followed the law. He did his duty.

Miller, without any sufficient cause in law or in fact, failed to make a levy or to do any act required by law of him in the

The People v. Smith.

premises, and appellant's remedy is against Miller and his bondsmen and not Smith, unless Miller should prove that his inaction with his senior execution was according to appellant's instruction, in which case appellant would have no remedy and nobody to blame but himself.

Reeves, J.    William Rhode recovered a judgment before a justice of the peace, November 7, 1881, against Gottlieb Schmoker.    Several executions were issued on the judgment, the last one on the 19th day of October, 1887, and was delivered to Fred Miller, a constable.    John Wolf, administrator of William Stuckey, recovered a judgment before the same justice on the 13th day of August, 1887, against said Schmoker, and execution was issued and delivered to appellee Smith, a constable, on the 11th of November, 1887.    The Rhode execution was levied on five head of cattle, one wagon and one gun, and the property sold, realizing the sum of $92.    The execution was for $123 and costs.    The execution in the hands of Smith was levied on a horse belonging to Schmoker, sale made, and $35 realized from the sale.

This suit was brought against Smith and the securities upon his official bond, to recover the $35 made on this sale.    The contention of appellant is that as the Wolf execution was junior to that of Rhode, appellee Smith should have turned over the money made by the sale of the horse, to be applied on Rhode's execution.

An examination of the facts disclosed by the record will be necessary to properly determine the question at issue.    It appears that the Wolf execution was first placed in the hands of constable Miller.    The same day he met constable Smith, and an arrangement was made by which Miller turned over to Smith the Wolf execution, with the understanding that Miller should make the Rhode execution, which he then had in his hands, before Smith was to make a levy.    However, Smith asked Miller to wait before making a levy on the Rhode execution, until he could serve the Wolf execution on Schmoker, and then they would both go up together and make a levy, when Miller could first make his money and he, Smith, would take what was left.    It was arranged that Smith should serve

his execution on Schmoker, and ten days thereafter he would come to Miller's house, and they would go up together and levy the executions. Miller says that Smith did not keep his agreement, but after the expiration of the ten days went to Schmoker's and levied on the horse and took it into his custody. When Miller went to Schmoker's he levied the Rhode execution on all the property he could find, and in due time sold the same, with the result above stated. The Rhode execution was levied while it was still alive. Smith says it was agreed that he and Miller should go together to Schmoker's and levy the executions, and that he went to Miller's house twice to see him. The first time, not finding Miller at home, he told Miller's wife that he would come again the next morning, and to tell Miller to be on hand to go to Schmoker's. He went back next morning and, not finding Miller, he went to Schmoker's and levied his execution on the horse.

William Rhode testified to a conversation between Miller and Smith in reference to their agreement, which occurred after Smith had levied on the horse, in which Smith admitted that he had agreed with Miller not to levy the Wolf execution before Miller levied the Rhode execution, but claimed that he had been to Miller's house once, and not finding him, went ahead and levied his execution. It further appears that Smith received the money on the sale on his execution and still holds it. It also appears that Miller was present at the time Smith sold the horse on the Wolf execution, but said nothing about his execution. Under this state of facts is Rhode entitled to recover the money in the hands of appellee Smith? It is conceded that an execution becomes a lien on the personal property of the judgment debtor from the time it is delivered to a constable. It was held, in Rogers v. Dickey, 1 Gilm. 644, that if an officer having a junior execution makes a levy and sale of the defendant's goods, the sale will be valid, and the officer having a senior execution can not take the property from the purchaser. The only remedy of the party injured is against the officer. Which officer? the one holding the senior execution or the one holding the junior execution? It must be remembered that it was held in Rogers v. Dickey, *supra*, that the officer holding the senior execution may, after

The People v. Smith. .

the levy of a junior execution, levy upon the property and take it from the officer holding the junior execution, provided he does so before the sale. That was the exact question decided in the case; hence, after Smith made his levy upon the horse, Miller had the right, and it was his duty, to have levied Rhode's execution upon the horse and taken it from the possession of Smith. He did not even levy his execution upon the horse; he knew Smith had levied on the horse; he was present at the sale under Smith's execution; he failed to perform his duty. We do not see how the agreement between Smith and Miller affects the rights of the parties under the facts occurring subsequently. Miller knew before the sale by Smith that Smith had not kept his agreement, and the law clothed him with ample power to protect himself by levying on the horse and taking it from the possession of Smith.

In this view it would seem that Rhode's remedy is against Miller and not against Smith. It would undoubtedly be true that if Miller had levied his execution before the sale by Smith, and, proceeding to take the property from Smith, the latter had agreed with Miller that if he would permit Smith to sell under his execution he would turn over the proceeds of the sale to apply on the Rhode execution, Rhode could have recovered from Smith for money had and received for his use. But that is not the case made by this record. It should be observed that a different rule applies where two or more executions come into the hand of the same officer varying in priority. In such case, if the officer levies and sells on a junior execution, it is his duty to apply the money realized upon the senior execution. The property is already in his hands, and it would be a useless thing to require that he should, after a levy of the junior execution, make a levy on the senior execution, and take the property from himself under the first levy, and hold and sell it under the subsequent levy.

The law will hold the officer in such a case to apply the money in the same order as it would have gone if he had levied the senior instead of the junior execution.

The judgment of the Circuit Court is affirmed.

*Judgment affirmed.*